IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) ) ) Case Number: 4:21-cr-00264-RK-1 |
| v. | ) ) ) |
| ANTHONY BYRON MARSHALL, *Defendant.* | ) ) ) |

## DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR VARIANCE FROM THE GUIDELINE SENTENCE

COMES NOW, Defendant, by and through undersigned counsel, Michael Crawford, for this, Defendant's Sentencing Memorandum and Motion for Variance from the Guideline Sentence.

### I. INTRODUCTION & BACKGROUND

Defendant entered a plea of guilty to Count 1 and Counts 2 through 5 on August 4, 2023. Despite plea negotiations taking place, there was never any formal plea offer made to Defendant. Defendant entered his pleas of guilty as follows; as to Count 1 Defendant pled guilty of Use of Interstate Facility to Entice Minor to Engage in Illegal Sexual Activity pursuant to 18 U.S.C. § 2422(b), and in Counts 2 through 5 Defendant pled guilty to Receiving Child Pornography Over the Internet pursuant to 18 U.S.C. § 2252(a)(2). Defendant entered his guilty plea in each Count without any plea agreement in place. Defendant is currently in the custody of the US Marshals; he is being held at USP-Leavenworth.

On October 19, 2023, US Probation Officer, Brent C. Reaves completed a preliminary Presentence Investigation Report (hereinafter "PSIR") concerning Defendant in the above-captioned case. The PSIR was received by undersigned counsel on that same date. . The PSIR was mailed to Defendant via USPS, and Defendant confirmed receipt on or about October 23, 2023. On October 31, 2023 undersigned counsel and Defendant met, via WebEx video conference. Defendant and undersigned counsel thoroughly reviewed the PSIR. The individual sections within the PSIR were examined and discussed with Defendant. Defendant acknowledged his understanding thereof. Defendant submitted objections to certain information, conclusions, classifications, and recommendations within the PSIR. Each of those objections is identified and set forth in "Defendant's Objections to the Presentence Investigation Report". (doc. 46). While ultimately the objections made by Defendant to the PSIR will need to be ruled upon by the Court, the Probation Officer, submitted Responses to each of the objections made by Defendant. (doc. 48). The Court's ruling on each of Defendant's objections to the PSIR could alter the Guideline Sentence. Notwithstanding the Court's ruling thereon, at the time of sentencing, Defendant will respectfully request that the Court "vary" from the Guideline sentence and impose a sentence that is fair and just, and a sentence that is "sufficient, but not greater than necessary," to fulfill the purposes of sentencing under 18 U.S.C. §3553(a). at the forefront of Defendant's request is his priority to at some point during his natural life, to return to his residence in order to care for his family and return to his employment as he has done for the entirety of his adult life prior to this case.

In light of the Supreme Court's decision in *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 596 (2007), it is clear that this Court enjoys enormous discretion in determining the appropriate sentence for Defendant, regardless of the specific sentence called for by the Guidelines. *See United States v. Tomko*, 2009 WL 1025876 (3d Cir. Apr. 17, 2009) (en banc) (affirming district court's substantial variance to probation and home confinement because "a district court must be potentially able, when the proper situation arises, to sentence a defendant outside the Guidelines range but within the statutory range"); *United States v. Cavera*, 550 F.3d 180, 200 (2d Cir. 2008) (en banc) (noting that the court will "set aside a district court's substantive determination only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions'"); *United States v. Gardellini*, 545 F.3d 1089, 1095 (affirming downward variance and noting that "it will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable"); *see, e.g., United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (affirming sentence of probation where Guidelines called for 41 to 51 months of imprisonment and noting that the Supreme Court's recent sentencing decisions "breathe life into the authority of district court judges to engage in individualized sentencing"); *United States v. Ruff*, 335 F.3d 999, 1004 (9th Cir. 2008) (affirming substantial downward variance to halfway house time because, among other things, it permitted the defendant to spend more time with his 11-year-old son).

## II. *MOTION FOR VARIANCE*

The guidelines in child pornography cases are driven by Congressional directives and are not grounded in any scientific statistical, nor empirical method. As such, they do not deserve deference from this Court as the result is a recommended sentence that is greater than necessary to provide just punishment. In general, the guidelines sentencing scheme for child pornography crimes illogically skews sentences for "average" defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, thus blurring distinctions between least and worst offenders." *United States v. Noe*, 8:08CR250, 2009 WL 3836707, at *7 (D. Neb. Nov. 13, 2009)

It is apparent from other District Court Cases within the 8th Circuit that there is an increasingly present categorical policy disagreement with the child pornography guidelines. See, *United States v. McGrath*, 8:12CR422, 2014 WL 351975 (Jan. 31, 2014), *United States v. Strayer*, 8:08CR482, 2010 WL 2560466 (June 24, 2010), *United States v. Stieren,* 8:12CR423, 2013 WL 5539359, (Oct. 7, 2013), *United States v. Plachy*, 4:12CR3049, 2013 WL 1914613 (May 8, 2013). District courts are also now free to categorically disagree with the guidelines, at least in areas where they "do not exemplify the Commission's exercise of its characteristic institutional role." *United States v. Zauner*, 688 F.3d 426 (8th Cir. 2012) (*quoting Spears v. United States*, 555 U.S. 261, 264, 129 S.Ct. 840, 172 L.Ed.2d 596 (2009) (per curiam)), see also *Kimbrough v. United States*, 552 U.S. 85, 109, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007)). An increasing number of district courts have exercised that discretion with respect to the child pornography guidelines. See *United States v. Beiermann*, 599 F.Supp.2d 1087, 1100 (N.D. Iowa 2009) (categorically rejecting

Page 4 of 15
Case 4:21-cr-00264-RK    Document 52    Filed 02/19/24    Page 4 of 15

U.S.S.G. § 2G2.2 on policy grounds and listing cases); *United States v. Price*, No. 09–CR–30107, 2012 WL 966971, at *11 (C.D. Ill. Mar. 21, 2012) (noting similar issues with U.S.S.G. § 2G2.1 and departing downward at sentencing). Regardless, the Court must consider the relevant factors set forth in 18 USC 3553(a) and determine an appropriate sentence in this case. As such, the more material analysis is of the facts pertinent to the considerations under 18 U.S.C. §3553(a).

### III.  18 USC 3553(a) FACTORS

§3553(a) sets forth four factors for the Court to consider when imposing sentence; (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence , (3)  kinds of sentences available, and (4) the kinds of sentence and the sentencing range established for the category of offense and the category of defendant established by the guidelines, (5) any pertinent policy statement, (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

### A. Nature and circumstances of the offenses

Defendant previously filed his Objections to the Presentence Investigation Report (PSIR) on November 2, 2023. (Doc. 46). Defendant incorporates the objections set forth therein as they pertain to the nature and circumstances of the offenses.

Defendant's objections to the enhancements are primarily set forth in the aforementioned Objections (Doc. 46).  However, Defendant asserts that the offense level calculation in the PSIR, is without the two-level downward adjustment under USSG §

2G2.2(b)(1) which is undeniably applicable here. The pertinent language states that a reduction of 2-levels should be applied when a "defendant did not intend to traffic in or distribute such material." This is appropriate here. There is no evidence of any intent to distribute the materials here, and Defendant's "conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor; and (C) the defendant did not intend to traffic in, or distribute, such material." Thus, a 2-level decrease should be added to the offense level calculation. Defendant further provides the following in support of several of the objections made to the allegedly applicable enhancements from USSG §2G2.2 found to apply by the Probation Officer.

In particular, the 5-level enhancement set forth in the PSIR under Part A, Paragraph 41, should be deemed inapplicable. *See* U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (2012) ["*Child Porn Report*"] (because the enhancements for computer use and type and volume of images "now apply to most offenders," the guideline "fail[s] to differentiate among offenders in terms of their culpability). Not only does the guideline itself fail to differentiate between culpability, but it also fails to set forth any type of avenue or assessment to determine which images or which videos were actively sought or even seen by a defendant. The number of images available within the "MEGA" link is not relevant conduct. The mere possibility that Defendant could have viewed more images within is not "conduct". Nothing in the evidence in this case shows any further acts in relation to the "MEGA" Link with respect to specific videos or images, only receipt of the link.

Moreover, relevant conduct is defined under the guidelines as, "[A]ll acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense" USSG § 1B1.3 Having the mere possibility of accessing all the images, without actually doing so, is not an act or omission. There is no evidence that Defendant attempted or actually knowingly possessed or knowingly accessed with intent to view each of the videos or images within the "MEGA" link. The 5-level enhancement under § 2G2.2(b)(7)(D) should not apply.

### B. Characteristics and personal history of Defendant

Anthony Byron Marshall was born on May 27, 1992, in Kansas City, Missouri, to Keith Marshall and Cheryl (Childress) Hampton, who were never married. He has been a lifelong resident of the Kansas City, Missouri, area. Defendant's father was not involved in his upbringing and was incarcerated for as a result a robbery conviction when the defendant was a toddler. Defendant rarely had contact with his father growing up. Defendant was raised off and on between his mother and his paternal grandparents[1] who now reside in Muskogee, Oklahoma. Due to drug use, his mother was often evicted from residences, resulting in him and his siblings frequently moving. Defendant's mother frequently found herself in custody due to her frequent use of phencyclidine (PCP).

---

[1] Calvin and Herstirene Marshall

Despite his mother passing away around the same time he graduated high school, Defendant has shown an impressive ability to achieve success and support himself, and subsequently his children, without hardly any outside assistance. After high school, he enrolled in, and completed, vocational training. Defendant has been gainfully employed for the entirety of his adult life. Outside of the conduct in this case, he has undeniably been productive member of society.

Furthermore, it should be noted that prior to his arrest for the charges pending in this case, Defendant had expressly identified a problem that he had developed with pornography, and was actively seeking professional help, care, and treatment for his addiction which he openly admitted he needed help to overcome. It is admirable that upon the realization, he was immediately proactive in efforts to better himself for his family.

### C. The advisory guideline sentencing range is not necessary to avoid undermining the seriousness of the offense, a fair and just punishment can be found well below the guideline sentence.

The advisory sentencing guideline range in this case has been calculated by the United States Probation Office to be a term of life. Under the circumstances here, that guideline sentence is tremendously extreme for several reasons. In light of Defendant's criminal history score of zero, thereby establishing a criminal history category of "I"; the guidelines sentence is the solely result of a base offense level of 22 combined with 13 points worth of enhancements in relation to "Count Group 1".[2] Whereas in "Count Group

---

[2] Counts 2, 3, 4, and 5.

2" and "Count Group 3"[3] the base offense levels are each 28 and both are calculated to have 8 points worth of enhancements.

Notwithstanding the fact that Defendant did plead guilty to Counts 1 through 5, it should be noted that neither of the alleged victims that could establish guilt in Count 1, are anticipated to be present at sentencing. For an enhancement to be found absent an opportunity by Defendant to cross-examine either JV1 or JV2 at sentencing as to the relevant facts to possibly support or dispute applicability of an enhancement would be a clear violation of Defendant's right to due process Thus, the enhancements in Count Group 3 must be deemed inapplicable or otherwise those in Count Group 2. Both cannot be applied absent Defendant's right to due process and the ability to confront witnesses against him being afforded him.

Additionally, the enhancement for purported Obstruction of justice under §3C1.1 is utilized for a 2-level enhancement 2 times, and further the same alleged conduct is set forth in the PSIR as a basis for not applying the 2-level adjustment for "acceptance of responsibility" under §3E1.1. Effectively, the same factual allegation creates a 4-level enhancement as to each "Count Group 2" and "Count Group 3". As stated previously, at least a 2-level reduction in offense level is applicable here for his "acceptance of responsibility". It's hard to imagine any more significant or pure acceptance of responsibility than the plea that Defendant entered here. Without any plea agreement in

---

[3] Count Group 3 stems from either an uncharged or multiplicitous allegation of "use of interstate facility to entice a minor to engage in illegal sexual activity" from conduct involving a separate and distinct victim (JV2) from that identified in Count Group 2 (JV1).

Page 9 of 15
Case 4:21-cr-00264-RK   Document 52   Filed 02/19/24   Page 9 of 15

place, he entered a plea of guilty to all counts. Furthermore, the conduct that is alleged to justify the application of the obstruction of justice enhancement occurred very early in the investigation. At no point thereafter is it alleged that Defendant has had any contact with any of the alleged victims, nor the person that provided the "MEGA" link. Furthermore, when asked to do an interview with law-enforcement, should've complied voluntarily, and provided assistance to the best of his ability by being truthful, and honest with the agents. Much of the factual circumstances in this case, point away from obstructing justice, rather than the PSIR leads the Court to believe. Without the 2-level enhancement under §3C1.1 in Count Group 2 and Count Group 3, combined with the inclusion of at least a 2-level decrease in offense level for acceptance of responsibility the Adjusted Offense Level in each would be no more than 32.

Since 1991 the base offense level for child pornography cases has steadily climbed higher and higher due to Congressional directives to the Sentencing Commission. As to Count Group 1, the 13 points worth of enhancements generally involve enhancements stemming from the presence of prepubescent minor, sadistic conduct, use of a computer and more than 600 images.

With a criminal history category of "I" Defendant is a prime example of a person who is unfortunately an unintended subject to the much harsher penalty given the increased base offense levels and disproportionately applicable enhancements that have been put in place to ensure the seriousness of these types of offenses are adequately accounted for. Yes, when the circumstance is one that is the case here, many district courts have logically reasoned that oftentimes these are enhancements, "that apply in virtually every case. while

it is unfortunate to say the least, logically speaking, the internet has become the typical means of obtaining child pornography, and internet child pornography cases are essentially the only kind of child pornography crime prosecuted in federal court. Thus, given the high probability of applicability, these enhancements for use of a computer and number of images are a poor gauge to differentiate between offenders. See *United States v. Noe*, 8:08CR250, 2009 WL 3836707, at *8 (D. Neb. Nov. 13, 2009) "an enhancement for possession of sadistic and masochistic images will apply whether or not a defendant specifically intends to possess such material and is thus another inadequate measure of culpability. As broadly defined in the Eighth Circuit, the four-level enhancement for portrayal of sadistic or masochistic conduct or images of violence applies in many, if not most, cases").

In reality, the Guidelines set forth in § 2G2.2, consists of a hodgepodge of outdated enhancements, the nature of the enhancements given the type of charge that apply in nearly every case, rather than furnishing means to carefully differentiate between offenders based on culpability and dangerousness. In sum, Guidelines set forth in § 2G2.2 should be given little, if any, weight especially in this case where Defendant has a Criminal history category of "I". By eliminating the enhancements applied in the PSIR from the Guidelines set forth in § 2G2.2 the Offense level associated with Count Group 1 would be reduced by 13, relative to the PSIR.

As such, Defendant submits it is clear the advisory guideline sentence itself does not promote any further respect for the law than the statutory minimum nor does it provide any fair and just punishment under the circumstances.

Page 11 of 15

Case 4:21-cr-00264-RK    Document 52    Filed 02/19/24    Page 11 of 15

> **i. The advisory guideline sentence is not necessary to provide for general deterrence.**

General deterrence is not served by the advisory guideline sentence in this case. General deterrence is undeniably accounted for by the statutory minimum and is best served by the public's knowledge that punishment will be imposed, not the length of any certain term of imprisonment beyond that of the minimum under the statute.

### D. The advisory sentencing guideline range is not necessary to protect the public from further crimes of Defendant.

As this Court is aware there is no prior criminal history from Defendant, outside of the allegations he entered a plea of guilty to in this case and the surrounding circumstances. Prior to this case, Defendant had never been charged with or even alleged to have been involved with any sort of illegal contact with minors nor any other predatory behavior such as enticement. Defendant intends to present further evidence in support of this factor at sentencing in this case.

### E. The advisory sentencing guideline range will not provide the defendant with needed educational or vocational training, medical care, or other correctional.

The advisory guideline sentence in this case would not benefit the purposes of sentencing by providing Defendant with any educational training or treatment. Defendant has a prior history and background of being proactive in obtaining the training and education needed to be a successful and productive member of society. As stated previously, he has been employed for the entirety of his adult life, as an employee with trained and certified skills in the construction industry and as a forklift operated. He is well educated and has pursued further opportunities to further his education and employment

prior to incarceration in this case. There is nothing that the Bureau of Prisons can offer Defendant that he could not, and in fact has previously started and completed on his own.

## IV. CHAPTER FOUR ENHANCEMENTS

The 5-level enhancement under USSG §4B1.5(b) as applied in the PSIR, should be deemed inapplicable under the circumstances. The notes in USSG §4B1.5 provide that "for purposes of subsection (b), the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor". See Note 4. The Probation Officer cites mere allegations in the PSIR with respect to the application of the 5-level enhancement under USSG §4B1.5(b). specifically, the PSIR states that "The defendant engaged in prohibited sexual conduct with JV1 after the two met in person and the defendant exposed his penis while stating, "Come on." The defendant also met JV2 on three separate occasions. On the first occasion, the defendant touched JV2's buttocks. The defendant later engaged in vaginal intercourse and oral intercourse with JV2 on two different occasions." Notwithstanding Defendant's plea of guilty as to Count 1, these factual allegations are without merit absent admissible evidence in support thereof. Thus, without evidence to support these assertions and application of the 5-level enhancement under USSG §4B1.5(b) the enhancement must be removed.

## V. REQUESTED SENTENCE

In light of the above and foregoing in addition to Defendants previously submitted objections to the PSIR, Defendant respectfully requests that the Court make a determination calculating the Combined Adjusted Offense Level is 33. With an Offense

Level of 33 and a criminal history category of I the guidelines, and requested, sentence would be 135-168 Months of Imprisonment.

**WHEREFORE**, Defendant asserts the above and foregoing along with and in support of Defendants previously submitted objections to the Presentence Investigation Report and further respectfully requests that the Court find that the Government has not established evidence beyond its required burden to prove any unresolved recommendations, enhancements, calculations, and/or conclusions as set forth in the Presentence Investigation Report, which was prepared on October 19, 2023 and revised on November 17, 2023 and any responses by the Probation Officer and impose the sentence requested herein under Count 1 and that the Court sentence Defendant to the statutory minimum in each of Counts 2 through 5 and order each sentence to run concurrently with one another and for such other and further relief the Court deems just.

Respectfully submitted,
***Law Office of Michael Crawford***

 /s/ Michael Crawford
Michael Crawford #64799
929 Walnut Street, Suite 4109
Kansas City, MO 64106
Phone: 816-945-9579
Fax:  816-945-9593
mcrawford@kclegaldefense.com
***Attorney for Defendant***

## CERTIFICATE OF SERVICE

I, undersigned, do hereby certify that on this <u>     19th  </u> day of <u>February    </u>, 2024, I sent a copy of the foregoing via electronic mail to each below identified party and also electronically filed the foregoing document with the Clerk of the Court using CM/ECF system, which will serve a notice of electronic filing all parties of record:

1. *Catherine Connelly - <u>catherine.connelly@usdoj.gov</u>*
   *Attorney for the Government*

2. *Brent C. Reaves – <u>Brent_Reaves@mow.uscourts.gov</u>*
   *US Probation Office*

<u>/s/ Michael Crawford         </u>
***Attorney for Defendant***