IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY BYRON MARSHALL,<br><br>Defendant. | Case No. 21-00264-01-CR-W-RK |

**GOVERNMENT'S SENTENCING MEMORANDUM**

COMES NOW, the United States of America, by and through Teresa A. Moore, United States Attorney, and Catherine A. Connelly, Assistant United States Attorney, and respectfully offers the Court the following background, points, authorities, and arguments in the above-captioned matter. For the reasons set forth below, and under the factors set out in 18 U.S.C. § 3553(a), the Government respectfully recommends that the defendant, Anthony Byron Marshall, be sentenced to 300 months' imprisonment, to be followed by a life-term of supervised release. The Government also asks the Court to impose the $100 Special Assessment on counts 1-5 under 18 U.S.C. § 3013, consider imposition of a separate Special Assessment of $5,000 under 18 U.S.C. § 3014 and an additional assessment of not more than $35,000 under 18 U.S.C. § 2259A(a)(2), and finalize the order of forfeiture of the defendant's device listed in the Preliminary Order of Forfeiture (D.E. 50) entered on December 5, 2023.

**I. BACKGROUND**

On November 16, 2021, a federal grand jury returned an Indictment charging Marshall with use of an interstate facility to entice a minor to engage in illegal sexual activity, in violation of 18 U.S.C. §§ 2422(b) (Count 1), and receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Counts 2-5). On July 25, 2023, without benefit of a written plea agreement, Marshall

pled guilty to all counts of the Indictment. (D.E. 45.) Marshall also admitted to a forfeiture allegation pursuant to 18 U.S.C. § 2253 specifically agreeing to the forfeiture of his cell phone.

In the subsequent Presentence Investigation Report (PSR)[1] Marshall's advisory Guidelines range was calculated as life imprisonment based on a total offense level of 43[2] and a criminal history category of I. (PSR ¶¶ 36-68.) The PSR's calculation includes enhancements to which Marshall objects. (*See* PSR Adden.) Specifically, Marshall objects to the following:

Application of a 2-level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1. (PSR ¶¶ 34, 52, 60);

Denial of an acceptance of responsibility 2-level decrease in offense level pursuant to U.S.S.G. § 3E1.1. (PSR ¶¶ 35, 67);

Application of a 2-level enhancement because the offense involved material which depicts a minor who had not attained the age of 12 years, pursuant to U.S.S.G. § 2G2.2(b)(2). (PSR ¶ 38);

Application of a 4-level enhancement because the offense involved material that portrays sexual abuse or exploitation of an infant or toddler, pursuant to U.S.S.G. § 2G2.2(b)(4). (PSR ¶ 39);

Application of a 2-level enhancement because the offense involved the use of a computer in commission of the offense, pursuant to U.S.S.G. § 2G2.2(b)(6). (PSR ¶ 40);

Application of a 5-level enhancement because the offense involved 600 or more images, pursuant to U.S.S.G. § 2G2.2(b)(7)(D). (PSR ¶ 41);

Application of a 2-level enhancement because the offense involved a participant unduly influencing a minor to engage in prohibited sexual conduct, pursuant to U.S.S.G. § 2G1.3(b)(2)(B). (PSR ¶ 47);

Application of a 5-level enhancement for pattern of activity involving prohibited sexual conduct, pursuant to U.S.S.G. § 4B1.5(b). (PSR ¶ 66);

Probation Officer's conclusion that no factors have been identified which would warrant a departure from the applicable guideline range. (PSR ¶ 124); and

Calculations and conclusions regarding adjusted and total offense levels noted in PSR ¶¶ 61-65, 67-68, and 105.

---

[1] "PSR will refer to paragraphs of the final Presentence Investigation Report (D.E. 40) which were not objected to by Mashall, unless otherwise noted.
[2] Marshall's offense level is 44. However, pursuant to Chapter 5, Part A, Comment note 2, an offense level of more than 43 is to be treated as an offense level of 43.

2

For the reasons noted in the Probation Officer's response to each objection, the government supports denial of acceptance of responsibility credit, application of all enhancements, and the calculations and conclusions that resulted in a total offense level of 43 a criminal history category of I, and a guideline imprisonment range of life imprisonment. (PSR ¶ 105).

On February 19, 2024, Marshall filed his Sentencing Memorandum and Motion for Variance from a Guideline Sentence. (D.E. 52.) In addition to requesting a sentencing variance, Marshall took the opportunity to make additional objections to sentencing findings contained in the PSR. Specifically, Marshall asserts that a 2-level downward adjustment pursuant U.S.S.G. § 2G2.2(b)(1) should be applied because he did not intend to traffic in, or distribute, sexually explicit images. The Government concedes this point and has no objection to a 2-level downward adjustment on this basis.

Marshall, without citing applicable law, expands on his objection to the five-level enhancement for 600 or more images, pursuant to U.S.S.G. § 2G2.2(b)(7)(D). As noted above, the five-level enhancement is correctly applied in this case. The government has already made its position clear on this issue and will not belabor the point in this filing.

Marshall also asserts that enhancements in Group 2 or Group 3 should not be applied to the sentencing calculation unless he is given the opportunity to cross exam at the sentencing hearing either JV1 or JV2 regarding the criminal conduct supporting the enhancements. Marshall misunderstands the law as it applies to sentencing proceedings. Marshall made no objections to the PSR's description of the offense conduct noted in paragraphs 3 through 29. (*See* PSR Adden.) Unless a defendant objects to a specific factual allegation contained in a PSR, the court may accept that fact as true for sentencing purposes. *United States v. Montgomery*, 701 F.3d 1218, 1223, (8th Cir. 2012). Further, even if Marshall had objected to facts pertinent to his due process argument,

3

the 8th Circuit has consistently held that the Confrontation Clause does not apply at hearings. *See*, *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and that the Rules of Evidence do not apply at a sentencing hearing. *United States v. Sheridan*, 859 F.3d 579, (8th Cir. 2027). Hearsay evidence is therefore admissible so long as that evidence possesses "sufficient indicia of reliability to support its probable accuracy." *Id*. Should the court sustain Marshall's objection, the government will call witnesses to meet its evidentiary burden.

## II. GOVERNMENT'S SENTENCING RECOMMENDATIONS

In fashioning a sentence, the Court is required to consider the nature and circumstances of the offense of conviction, and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). The Court must also examine the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and protect the public from further crimes of the defendant. 18 U.S.C. §§ 3553(a)(2), (A) and (C). Finally, the Court is also required to consider the advisory sentencing range recommended by the United States Sentencing Guidelines. 18 U.S.C §§ 3553(a)(3) and (a)(4). All of these factors support a sentence of 300 months, to be followed by a life term of supervised release.

In his sentencing memorandum (D.E.49) Marshall has requested a sentence within the 135-168 months imprisonment range to be applied to Count 1. This sentence would run concurrent to a statutory minimum sentence (5 years) imposed on Counts 2-5, running concurrent with each other, for a total sentencing range between 135-160 months. This sentence is even further below the recommended Guidelines than proposed by the Government. While the Government acknowledges that it is possible for the purposes of 18 U.S.C. § 3553(a) (Imposition of a Sentence) and the interests of justice to be served by a sentence below the recommended Guidelines, a period of incarceration lower than that suggested in this memorandum is not warranted in this particular case.

A.  **§ 3553(a)(1): The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The PSR summarizes in detail Marshall's conduct that resulted in his pleas of guilty to all five charges contained in the indictment (PSR, ¶¶ 3-29.) In the interest of judicial economy, the Government will not restate the facts in their entirety, however, the following notable facts are highlighted in support of a 300-months sentence.

In May 2021, the Federal Bureau of Investigation (FBI) learned Marshall had been texting with Kailon Lewis, the subject of a child pornography investigation. During one specific text Marshall requested images of "11 12 pyt (pretty young teens) blacks". In response, Lewis replied, "Yea it's extreme stuff tho". Lewis then explained, "Like incest it whoooole bunch of stuff I'm scared to say they doin stuff that u won't believe and they young type shit". Marshall responded, "I want it". How much and how many videos is it". Lewis stated "Alright man listen it's kids in here way younger then 11 ok? But it 11/12 in here ok?" At the end of the text chat, Lewis sent a MEGA link. (PSR¶¶ 3, 4.)

FBI investigators located the MEGA link sent by Lewis to Marshall. The investigator identified by hash values that 15 images and 89 videos wee known child pornography filed. An additional 70 images and 1401 videos were identified as suspected child pornography files. (PSR¶ 5.)

On October 19, 2021, FBR investigators executed a search warrant at Marshall's Kansas City, Missouri, residence. A number of electronics were seized including Marshall's iPhone. (PSR¶ 6.) Marshall consented to an interview by investigators. He was advised his phone number was the same phone number which had been engaged in communications with Lewis. He indicated he requested child pornography and received links containing child pornography via text message from the individual. He added the links were Dropbox or MEGA links which contained "bundles

of videos and advised that some of the videos he received and viewed showed adults having sex with babies. (PSR ¶ 7.)

Marshall advised investigators that he was communicating on his cell phone with a juvenile female (later identified as Juvenile Victim 1, (JV1)) who was 17 years old and attended East High School. He stated that JV1 sent him pictures or videos of her "cooter" or "titties". Marshall admitted he was in "hot water". (PSR ¶ 8.)

An investigator conducted a physical examination of Marshall's cellphone. Communications were observed where JV1 made several references to being in school and indicated she was a "kid". Although the Dropbox, MEGA, and Snap applications were not present on the phone, the "App Store" indicated that the applications had previously been downloaded to the device. (PSR ¶¶ 10, 11.)

On November 8, 2021, investigators reviewed Marshall's cellphone data. Communications between Marshall and JV1 were observed on September 14 and 17, 2021, as well as October 1, 2021. The conversations were sexually explicit, involving statements by Marshall such as, "Can I suck on yo pussy til u cum?" (September 17, 2021), and "Where can I nut at on u? (October 1, 2021). On October 1, 2021, Marshall received two videos from JV1. The first video depicted JV1 completely nude and masturbating her vagina with her hand in a lascivious manner. The second video depicted JV1 completely nude with her buttocks and vagina in close-up. JV1 is shaking her buttocks and vagina in a lascivious manner. Further conversations between Marshall and JV1 were observed where they discussed meeting to have sex. Marshall stated he wanted "head" from JV1 and wanted to stick his thumb in JV1's "ass". (PSR ¶¶ 14-17.)

On October 22, 2021, investigators conducted an additional review of text communications on Marshall's cellphone between Marshall and JV2 which occurred between April 15, and October 18, 2021. Although most of the conversations are sexually explicit, and on many occasions JV2

6

mentions being in middle school. She also talks about what she will do when she turns 16. During the conversations, Marshall repeatedly asks JV2 to take time away from school or sneak off so he can so they can have sex. JV2 sent four videos to Marshall. All depicted JV2 in sexually explicit activities. Marshall was charged with four counts of Receipt of Child Pornography for those videos. He pled guilty to receipt of all four. During a conversation on August 6, 2021, Marshall told JV2 to "make sure nobody sees our messages. Delete them." (PSR¶¶ 18-19.)

Later, on October 22, 2021, investigators contacted JV2's mother who took possession of JV2's cell phone and provided it to them. During review of text communications, investigators observed the same messages observed on Marshall's cell phone. In addition, text conversations between Marshall and JV2 between February 24, 2021, and April 1, 2021, were observed. During many of the conversations, Marshall requests images of JV2, "I'm bout to jack off I need some pics or videos". (March 24, 2021) and asks her to meet him for sex, "Come on get in my car". (March 24, 2021). (PSR¶ 20.)

On November 1, 2021, JV2 participated in a forensic interview. JV2 stated Marshall first communicated with her in November 2020 when he randomly contacted her via the Messenger phone application. She told Marshall she was 13 years old. The first time she met Marshall he touched her buttocks with his hand outside of her clothes. The second time they met was in November 2020, in the area of 39th and Prospect, Kansas City, Missouri. She got into the backseat of Marshall's vehicle before he took her pants and underwear off. JV2 was on top of Marshall when he used his hand to touch her private part she used to "pee" before Marshall put his private part he used to "pee" inside of her private part. JV2 met Marshall a third time in August in Raytown, Missouri. On this occasion, JV2 got into Marshall's vehicle before Marshall put his hand on her head and pulled it close to his private part. JV2 put her mouth on the private part

7

while Marshall moved her head up and down, over and over. During this meeting, Marshall told JV2 to delete their communications. (PSR¶¶ 22-24.)

JV2 advised the interviewer that Marshall displayed a handgun during one of the three meeting noted above. She described it as a Glock and stated Marshall indicated that if she dated anyone else he would go after them. (PSR¶ 25.)

On December 8, 2021, JV1 participated in a forensic interview. She advised she began communicating with Marshall when she was 16 years old and met Marshall on one occasion when she was 17 years old. They met in his vehicle for approximately 30 minutes and during that time Marshall pulled out his penis, showed it to her, and said, "Come on". JV1 further advised that after the meeting, Marshall called her to tell her the police had contacted him. Marshall told JV1 not to say anything to the police. Marshall communicated with JV1 after she had been contacted by the police in November 2021. The communication occurred via another person's Facebook page. (PSR¶¶ 26-28.)

The nature and circumstances of Marshall's offenses are abhorrent and establish the undeniable truth that Marshall is a serial sexual predator who, but for the intervention of law enforcement, would not have relented in his search for the next minor child to satisfy his sexual desire. His determination to feed his lust for minors clearly demonstrates that the safety of the most vulnerable members of the public demands a lengthy sentence. He deserves no less than a 300-month sentence.

**B.    3553(a)(2) The Need for the Sentence Imposed to –**

**Reflect Seriousness of the Offense, Provide Just Punishment, and Promote Respect for the Law; Promote Adequate Deterrence; and Protect the Public from Further Crimes of the Defendant**

The facts set out in the PSR demonstrate Marshall's sexual attraction to minors. A sentence of 300 months, which is below the Life imprisonment statutory minimum for Count 1, and below

8

the guidelines range calculated in the PSR, is what is needed to reflect the seriousness of the offenses and all of the relevant conduct by the defendant which is known to the court and set out in the PSR. A 300-month sentence appropriately recognizes the seriousness of the harm perpetrated by the defendant while providing a tangible benefit to the defendant for pleading guilty in a timely fashion. This sentence is a just sentence that will command respect for the law.

One can be relatively certain that Marshall will be deterred from committing additional child exploitation offenses while he is incarcerated, so a significant sentence will protect the public for at least that period of time.[3]

One recent meta-analysis of 10 studies with 944 adult males who were treated in institutional or community settings for illegal sexual behaviors concluded that more randomized studies were needed to accurately assess the effectiveness of psychological interventions (such as sex offender treatment.)[4] The study did conclude, however, that current evidence does not support the belief that once an individual has been treated their risk for reoffending is reduced.

A well-respected researcher into questions of sexual recidivism, Dr. Karl Hanson, has stated in a review of multiple studies:

> Sexual interest in children was a significant predictor of sexual recidivism. . . . Those individuals with identifiable interests in deviant sexual activities were among those most likely to continue sexual offending. **The evidence was strongest for sexual interest in children and for general paraphilias (e.g., exhibitionism, voyeurism, cross-dressing).** (Emphasis added)[5]

---

[3] The Government argues "relative" certainty because this office has prosecuted defendants who have obtained child pornography in prison, in a halfway house, and as registered sex offenders on supervised release.

[4] J.A. Dennis, O.Khan & M. Ferriter, N Huband, M.J. Powney & C. Duggan, *Psychological Interventions for Adults who have Sexually Offended or are At Risk of Offending*, 12 Cochrane Database Syst Rev CD007507 (2012).

[5] Hanson, Karl & Morton-Bourgon, Kelly, *Predictors of Sexual Recidivism: An Updated Meta-Analysis*, (2004) pp. 9, 15.

9

For the reasons noted above, Marshall is a person from whom the community needs a significant sentence to enforce personal safety and protection.

In his sentencing memorandum the defendant has proposed several mitigating factors in support of his request for a lenient sentence including his psychiatric and substance abuse issues. The Government has considered each of these factors, to the extent they are relevant, in requesting a 300-month sentence. Further consideration of Marshall's suggested mitigating factors as a basis for a sentence less than that requested by the Government is not warranted given the circumstances of his conduct in this case.

The Government's recommended sentence of 300 months, to be followed by a life-term of supervised release, is sufficient but not greater than necessary to serve the purposes of sentencing pursuant to § 3553(a). Such a sentence will specifically deter this defendant and, to the extent that other sexual deviants similarly situated as Marshall pay attention to sentences in the criminal justice system, the imposition of such a sentence for the instant offense should act as a general deterrent to similar behavior. A more lenient sentence should not be granted.

### III. CONCLUSION

The defendant's crime of conviction demonstrates his sexual desire for children and his willingness to engage in crimes furthering the sexual victimization of those children. A sentence of 300 months would reflect the seriousness of the offense, promote respect for the law and provide just punishment. Further, a sentence of this length will protect the public, particularly children, from future crimes committed by this defendant. Upon a lengthy and extensive review of any and all applicable provisions of the statutes and the facts and circumstances of this case, there exists no basis for further downward departure or downward variance, or a consideration of 3553(a) factors that would justify a sentence below the term requested by the Government. The defendant

deserves, and has earned a sentence of 300 months to be followed by a life-year term of supervised release.

Respectfully submitted,

Teresa A. Moore
United States Attorney

By

Catherine A. Connelly
Assistant United States Attorneys
Charles Evans Whittaker Courthouse
400 E. Ninth Street, Room 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was delivered on February 23, 2024, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

*/s/Catherine A. Connelly*
Catherine A. Connelly
Assistant United States Attorney